UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERSEL GREEN,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    07-CV-60S

NATIONAL GRID, NATIONAL GRID USA
SERVICE COMPANY, INC., NIAGARA MOHAWK
POWER CORPORATION, NIAGARA MOHAWK,
A NATIONAL GRID COMPANY, LOCAL 97,
COLOGNE SERVICES CORPORATION, and
HAMBERGER & WEISS

                              Defendants.


## I. INTRODUCTION

Presently before this Court are: (1) Defendant Local 97's Motion to Dismiss

Plaintiff's Amended Complaint pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules

of Civil Procedure (Docket No. 23); (2) a Motion to Strike and/or Dismiss the Original or

Amended Complaint pursuant Rules 12(b), (c), (e), (f), 15(a), 21, and 41(b) of the Federal

Rules of Civil Procedure filed by National Grid, National Grid USA Service Company, Inc.,

Niagara Mohawk Power Corporation, and Niagara Mohawk, a National Grid Company

("National Grid and Niagara Mohawk") (Docket No. 24)[1]; (3) Cologne Services

Corporation's ("Cologne") Motion to Strike and/or Dismiss the Amended Complaint

pursuant to Rules 8(a)(2), 9(b), 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure

---

[1] In the event this Court strikes Plaintiff's Amended Complaint, Defendants seek to renew their
Motion for Judgment on the Pleadings, filed on October 20, 2008, and directed towards the Original
Complaint.  (Docket No. 25 ¶ 16.)

(Docket No. 29); and (4) Plaintiff's Motion to Appoint Counsel (Docket No. 56).

For the following reasons, the Motions to Strike are denied, but all Motions to Dismiss the Amended Complaint are granted, and Plaintiff's Motion to Appoint Counsel is denied.

## II. DISCUSSION

### A.    The Nondispositive Motions

The Court's determinations on the Motions to Strike and Motion to Appoint Counsel are informed by this action's lengthy and rather tortuous procedural background.

#### 1.    <u>Procedural Background</u>

On September 15, 2006, Plaintiff Versel Green commenced this action through his attorney, Ruth M. Pollack, Esq., by filing a three-page Complaint in New York State Supreme Court, Erie County, alleging that his former employers, Niagara Mohawk and National Grid took various actions against him and ultimately terminated his employment in violation of "New York State Human Rights Law, Disability Law, Worker's Compensation Law, Family Medical Leave Act of New York, ERISA, and other laws to be determined," and that his union, Local 97, breached its duty of fair representation.  (Docket No. 1, Pl's Compl., ¶¶ 9, 11.)

On February 1, 2007, the action was removed on the ground of federal question jurisdiction, and assigned to the Honorable John T. Curtin, United States District Judge. On February 26, 2007, the case was transferred to the Honorable John T. Elfvin, United States District Judge, and on October 17, 2007, was assigned to this Court.

##### a.    *Defendants' Motions Addressing Plaintiff's Original Complaint*

On February 7, 2007, Local 97 moved to dismiss Plaintiff's Complaint. (Docket No. 6.) Although the Court found that the Complaint failed to comply with Rule 8(a) of the Federal Rules of Civil Procedure (Docket No. 10 ¶¶ 6-7), it gave Plaintiff 30 days "to file and serve an Amended Complaint setting forth his claims against Local 97 in greater detail" (Docket No. 10 ¶ 9).

Plaintiff, however, failed to meet both the 30-day deadline and a further deadline for amendment. (Docket No. 13.) Thereafter, on July 29, 2008, Local 97 renewed its motion to dismiss the Complaint. (Docket No. 14.) The Court directed Plaintiff to submit a response to Local 97's renewed motion by August 29, 2008. (*Id.*) Plaintiff failed to do so. Thereafter, on October 20, 2008, Niagara Mohawk and National Grid moved for judgment on the pleadings, or dismissal. (Docket No. 17.)

On November 26, 2008, this Court issued a *sua sponte* Order, directing Plaintiff to file an Amended Complaint setting forth its claims against Local 97 in compliance with Rule 8(a) within fifteen (15) days. (Docket No. 21.) Plaintiff was also advised that this was his third and final warning, and that there would be no further extensions of time. (*Id.*) The Court did not issue scheduling orders on the pending motions at that time, but stated its intent to do so should Plaintiff fail to file an amended complaint per the Court's instructions. (*Id.* ¶ 7.)

### b. Plaintiff's Amended Complaint

On December 15, 2008, Plaintiff, through his attorney, Ruth M. Pollack, Esq., filed an Amended Complaint. (Am. Compl., Docket No. 22.) The Amended Complaint has increased in length from 3 to 19 pages, adds new facts, contains new and expanded

claims, and names two additional defendants – Cologne (an insurance carrier) and Hamberger & Weiss (a law firm).

Plaintiffs Amended Complaint does not set forth separate, identifiable claims for relief. The following "claims" are gleaned from the jurisdictional statements and fact allegations: (1) National Grid, Niagara Mohawk, Cologne, and Hamberger & Weiss denied Plaintiff disability and other benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* (Am. Compl. ¶¶ 1, 113); (2) National Grid, Niagara Mohawk, and Local 97 retaliated against him for "whistle blower" activity in violation of, (a) "Section 510 of ERISA, codified at 29 U.S.C. § 1140," (b) "42 U.S.C. § 12101, *et seq.*" and (c) the "state law counterpart of [42 U.S.C. § 12101 *et seq.*]" (Am. Compl. ¶¶ 2, 5); (3) defendants made false statements or concealed facts relating to ERISA documents in violation of 18 U.S.C. § 1027 (Am. Compl. ¶¶ 3, 100), (4) Niagara Mohawk and National Grid violated the Americans with Disabilities Act ("ADA") and the ADA's "New York State law counterpart" (Am. Compl. ¶¶ 4, 111); (5) Local 97 breached its duty of fair representation (Am. Compl. ¶ 35); (6) Niagara Mohawk and National Grid violated the "Disability Law, Worker's Compensation Law, Family Medical Leave Act of New York, . . . and other laws to be determined" (Am. Compl. ¶ 85); and (7) Niagara Mohawk and National Grid defrauded him by misappropriating millions of dollars contained in a "Superfund" (Am. Compl. ¶¶ 102-107).

Plaintiff seeks $50,000,000.00 on each cause of action in addition to reinstatement, back pay, "front" pay, all retroactive fringe benefits, attorneys fees and costs, statutory interest, pain and suffering, punitive damages, and other relief this Court deems proper.

(Am. Compl. ¶ 115.)

### c. Defendants' Motions as to Plaintiff's Amended Complaint

On December 23, 2008, Local 97 moved to dismiss the Amended Complaint pursuant to Rules 12(b)(6) and (e), arguing that Plaintiff fails to state a claim and the amended pleading fails to comply with this Court's Order granting him leave to amend. (Docket No. 23.) Thereafter, Niagara Mohawk and National Grid filed a motion to strike the Amended Complaint or, alternatively, to dismiss whichever pleading survives as the operative document pursuant to Rules 12(b), (c), (e), (f), 41(b) of the Federal Rules of Civil Procedure, and Local Rule 41.2. (Docket Nos. 24.) Lastly, Cologne filed a motion to strike the Amended Complaint or, alternatively to dismiss the Amended Complaint pursuant to Rules 8(a)(2), 9(b), 12(b)(6) and 41(b). (Docket No. 29.) At a status conference before this Court, Hamberger & Weiss indicated, through counsel, that Plaintiff has not served it with the Amended Complaint.

By Decision and Order filed February 10, 2009, this Court directed Plaintiff to submit a response to all motions by March 2, 2009. (Docket No. 31.) Plaintiff timely submitted his response (Docket No. 35), and all moving Defendants submitted replies in further support of their motions. (Docket Nos. 36-38.) Thereafter, Plaintiff moved for an extension of time to file a sur-reply. (Docket No. 40.)[2]

---

[2] On January 14, 2010, Plaintiff's Motion was terminated.

### d.    Pollack's Suspension From Practicing Law

At some point after Plaintiff filed his response to the motions to dismiss, this Court discovered that Ruth M. Pollack, Esq., Plaintiff's counsel, had been suspended from practicing law in the Western District of New York.  As a result, this Court issued a Text Order on June 24, 2009, directing all parties to appear for a status conference on July 8, 2009.  (Docket No. 43.)

Pollack did not appear.  (Docket No. 44.)  This Court then informed the parties about Pollack's suspension, and terminated her from the case.  This Court gave Plaintiff 30 days to obtain new counsel, and scheduled another status conference for September 2, 2009.

At the status conference on September 2, 2009, Plaintiff informed the Court that he had retained new counsel, Fred J. Berg, Esq.  (Docket No. 45.)  Berg, however, did not appear.  As a result, this Court scheduled another status conference for September 16, 2009, and directed Plaintiff to inform Berg that he must file a notice of appearance by September 11, 2009.

Berg filed his notice of appearance on September 10, 2009.  (Docket No. 46.) However, he did not appear at the September 16, 2009 status conference.  This Court then scheduled an additional status conference for October 30, 2009, and directed Plaintiff to inform Berg that, in the event he would like to supplement Pollack's response to Defendants' motions to dismiss, he must do so by October 16, 2009.  Berg did not file a supplemental response.

At the status conference held before this Court on October 30, 2009, Berg did not appear in person.  Plaintiff stated that Berg was awaiting a phone call from the Court.  The Court placed a call to Berg at a phone number provided by Plaintiff, and allowed Berg to

participate in the conference telephonically. Berg sought leave to file an Amended Complaint in order to add another Defendant. This Court set November 30, 2009, as the date by which Berg must make a motion seeking leave to amend the complaint.[3] Lastly, this Court scheduled another status conference for February 3, 2010.

On November 30, 2009, Berg filed a Motion for Leave to File a Second Amended Complaint. (Docket No. 49.) However, the Clerk's office notified Berg that the motion was terminated due to filing errors, and directed him to re-file. After more than a month passed, this Court issued a Text Order directing Berg to re-file his motion on or before January 19, 2010. (Docket No. 51.) Berg did not do so. On February 2, 2010, the Court noted Berg's failure to file, and deemed all pending motions submitted. (Docket No. 52.) Later that same day, Berg filed Plaintiff's Motion for Leave to File a Second Amended Complaint. (Docket No. 53.) His filing was again deemed insufficient for failure to file a certificate of service and failure to include a header. The Court issued an Order finding that, even if Plaintiff cured the deficiency, the motion would be denied. (Docket No. 55.)

### 2. Plaintiff's Motion to Appoint Counsel

On June 2, 2010, Plaintiff filed a Motion to Appoint Counsel. (Docket No. 56.) This motion is denied for two reasons. First, Plaintiff already is represented by counsel. Fred J. Berg, Esq., remains Plaintiff's attorney of record. Second, in determining whether to appoint counsel for a plaintiff in a civil case, the threshold inquiry is whether or not the plaintiff's claim "seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58,

---

[3] By granting Berg time to file a motion seeking leave to amend the Amended Complaint, this Court, in no way, implied that it had accepted the Amended Complaint, and thereby ruled on the motions to strike. Instead, this Court was aware of the pending motions to strike at the time it held the status conference.

61 (2d Cir. 1986).  Because, as fully set forth below, this Court finds that Defendants'
Motions to Dismiss the Amended Complaint should be granted, Plaintiff cannot
demonstrate that his claims meet this threshold.  Accordingly, Plaintiff's Motion to Appoint
Counsel is denied.

### 3.  **The Motions to Strike**

Defendants Niagara Mohawk/National Grid and Cologne have moved to strike the
Amended Complaint or, alternatively, dismiss the Amended Complaint.  The requests to
strike are premised on the ground that the Amended Complaint exceeds the scope of this
Court's order, which granted Plaintiff leave to amend solely to set forth his claims against
Local 97 in greater detail.  Defendants urge that, because the Amended Complaint adds
new defendants, and add factual allegations beyond what was authorized and which form
the basis for expanded claims, it must be stricken.

While this argument may have merit, this Court finds that the most prudent and
efficient course of action is to deny the requests to strike, and consider the fully briefed
Motions to Dismiss the Amended Complaint.  Except for Plaintiff's "Superfund Fraud"
claim, the statutory bases for relief in the original and amended complaints are identical.
Were the Court to strike the Amended Complaint, it would then be required to set briefing
schedules on the original Motions to Dismiss, and permit Plaintiff an opportunity to
respond.  (See Docket No. 21, ¶¶ 7-8 (no scheduling orders issued on motions to dismiss
original complaint).)  In light of this case's procedural history, that is likely to create
significant additional delay.  So, this Court will deny the requests to strike and proceed to
consider the fully briefed Motions to Dismiss the Amended Complaint.  This gives Plaintiff

the benefit of his Amended Complaint (which this Court arguably accepted on October 30, 2009, when it gave Plaintiff an opportunity to move to file a second amended pleading to add yet another defendant), and gives both parties the benefit of a more expeditious resolution.

**B.    The Motions to Dismiss**

       **1.    <u>Factual Background</u>**

The following facts, alleged in the Amended Complaint, are assumed true for purposes of the Motions to Dismiss.

Plaintiff, an African American male, commenced employment with Niagara Mohawk, a utility company, on or about May 4, 1982, as a full-time custodian and member of Local 97. (Docket No. 22, Am Compl. ¶¶ 11, 16, 20, 34, 48.) In 2002, Niagara Mohawk was acquired by another utility company, National Grid. ( ¶¶ 11, 15.)

Approximately one year after commencing employment with Niagara Mohawk, Plaintiff was promoted to the Meter and Testing Department under the supervision of Jerry Sawyer. (¶¶ 27, 47.) That position also was represented by Local 97. (¶¶ 16, 27, 34.) Sawyer "engaged in discriminatory practices by selecting who he wanted to be Shop Steward in contravention of Company and Union rules . . . ." (¶ 28.) At times, Sawyer would "single Plaintiff out and follow him around and hassle him." (¶ 38.) Plaintiff complained to management and his Union about a hostile work environment, dangerous conditions, retaliation, and discrimination, but none of his complaints were remedied. (¶¶ 22-25, 30.) Niagara Mohawk and National Grid "fired [Plaintiff] at least 2-3 times and disciplined [him] another 2-3 times as retaliation" for his complaints. (¶ 31.) Defendants

further retaliated against Plaintiff by failing to pay his medical bills "throughout the years of his employment." (¶ 32.) Plaintiff later recovered those medical expenses in a Small Claims Court action. (¶ 37.)

Local 97 refused to represent Plaintiff with regard to unspecified acts and to safeguard his unspecified interests. (¶¶ 34-37.)

While working in the Meter and Testing Department, Plaintiff was responsible for the initial wiring of electric meters. (¶ 61.) At some unspecified time, "Defendant" provided Plaintiff with incorrect schematics and later brought him up on charges for wiring the jobs incorrectly. (¶ 57.) "Defendants" failed to provide supervision and assistance that he requested, and forced him to work alone. (¶¶ 58, 62-63.) "Defendants" also rewired Plaintiff's work to sabotage it. (¶¶ 59, 67-68.)

Management sent three letters to Plaintiff—a November 19, 2002 letter regarding a failure to perform his duties as field tester, a December 12, 2002 letter stating that Plaintiff's job-related requests were unreasonable, and an "inaccurate" letter dated January 13, 2003—which "violated the Department of Labor and the companies' own rules and regulations." (¶¶ 64-65, 71-73.)

On January 13, 2003, Plaintiff was injured on the job. He was "pulling up a transformer to a bracket," which caused his back to "snap in minus 5-degree F. cold weather." He claims he was assigned this task in retaliation for filing a union grievance. (¶¶ 49, 54, 75.) Plaintiff was diagnosed as having "thoraco lumbar strain." (¶¶ 77.)

Plaintiff obtained a doctor's note, dated May 13, 2003, stating that he was able to return to work. (¶ 90.) He "intended to return to work on light duty," on August 30, 2003, but Defendants would not allow him to do so. (¶ 85.)

By letter dated October 3, 2003, "corporate defendants informed [P]laintiff that his dental coverage was terminated [ ] on September 30, 2003." (¶ 92.) He was later informed by a Human Resources Representative that he was retired and would be receiving retirement papers. (¶ 94.) Plaintiff "signed [retirement] papers under duress" on November 13, 2003. (¶ 96.) He then received checks with "ZEROS" on them until December 18, 2003, when he received a check for sums purportedly due from September 2003. (¶ 97).

On June 7, 2004, the Worker's Compensation Board awarded Plaintiff $400 per week for his injury. (¶ 79.) On December 3, 2004, Plaintiff received a Worker's Compensation Board determination of permanent, partial disability. (¶ 80.) On July 27, 2005, Defendants' physician determined that Plaintiff suffered severe, secondary depression with paranoia because of his injury, and had a 100% psychiatric disability. (¶¶ 81-82, 84.) Thereafter, Judge Colin E. Fritz awarded Plaintiff damages for his consequential psychiatric disorder. (¶ 82.)

## 2.   Standard of Review

Federal pleading standards are generally not stringent. Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation marks omitted).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007);

Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). Legal conclusions, however, are not afforded the same presumption of truthfulness. *See* Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility is present when the factual content of the complaint allows for a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* at 1950; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint. First, statements that are not entitled to the assumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. *See* Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." *Id.*

### 3.    Plaintiff's ERISA Claims

Plaintiff's various ERISA allegations fall into three categories, the failure to provide

some portion of benefits due, retaliation, and criminal conduct. Each is discussed in turn.

### a.    Denial of Benefits

As best the Court can discern, Plaintiff alleges he was denied benefits he was due in violation of ERISA by the following acts. "Corporate defendants" informed Plaintiff that his dental coverage was terminated on September 30, 2003. (Am. Compl. ¶ 92.) "Defendants Corporations" wrongfully placed him on "retirement disability" and then failed to pay him the appropriate benefits for such a title. (Am. Compl. ¶ 99, 110.) Plaintiff's ERISA rights were violated when a judgment was obtained against his disability income relating to a loan from Niagara Mohawk's credit union. (Am. Compl. 108-109.) Cologne Services, an insurance carrier, agent, and broker, issued checks to Plaintiff in a fraudulent manner and stopped the payment of benefits due him. (Am. Compl. ¶¶ 18-19, 98.) Hamberger and Weiss, a law firm, improperly sought an "offset" to Plaintiff's disability retirement income. (Am. Compl. ¶¶ 14, 113.)

Niagara Mohawk/National Grid move to dismiss the denial of benefits claim on the ground that Plaintiff failed to exhaust his administrative remedies under the purported plan(s) prior to bringing suit. (Docket No. 26 at 11.) Cologne construes the allegation against it as one for fraud, and argues that Plaintiff fails to meet the pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure. (Docket No. 29-3, at 3-4.) As noted above, Hamberger & Weiss has not entered an appearance in this case. It advised the Court it has not been served and no evidence of service appears on the docket.

There are two types of employee benefit plans under ERISA, "employee welfare benefit plans" and "employee pension benefit plans." Prieto v. Election.com, No. 04-CV-4413, 2005 U.S. Dist. LEXIS 38241, at *9 (E.D.N.Y. Dec. 29, 2005). While Plaintiff's

claims appear to infer the existence of both types, he has not expressly identified any employee benefit plan governed by ERISA, nor has he appended the at-issue plan(s) to his Amended Complaint. Even assuming Plaintiff's vague statements are sufficient to allege the existence of an ERISA plan(s), his allegations regarding the purported denial of benefits are subject to dismissal.[4]

Congress requires that ERISA benefit plans establish dispute resolution procedures for participants whose claims to benefits are denied. Bernikow v. Zerox Corp. Long-Term Disability Income Plan, 517 F. Supp. 2d 646, (W.D.N.Y. 2007) (citing 29 U.S.C. § 1133). While there is no statutory requirement that ERISA plaintiffs exhaust administrative remedies prior to filing a federal court action, courts, including the Second Circuit, have developed the requirement that a plaintiff exhaust internal plan procedures before seeking judicial relief. Chapman v. Choicecare Long Island Term Disability Plan, 288 F.3d 506, *as amended by*, 2002 U.S. App. LEXIS 24460, at *11 (Dec. 3, 2002) ("We require exhaustion of benefit claims brought under ERISA."); Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (recognizing the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases). The purposes of the exhaustion requirement are to "' help reduce the number of frivolous lawsuits under ERISA; [ ] promote a non adversarial method of claims settlement; and [ ] minimize the costs of claims settlement for all concerned.'" *Id*. (quoting Amato v. Bernard, 618 F. 2d 559, 567 (9th Cir. 1980)) (alternations added). In short, it is well-established that timely exhaustion of

---

[4] The Court also will assume, for purposes of this discussion only, that each of Plaintiff's discrete fact allegations would state a cognizable claim for relief.

remedies is a prerequisite to suit and that, absent equitable considerations, the claims of a plaintiff who fails to allege administrative exhaustion must be dismissed. <u>Davenport v. Harry M. Abrams, Inc.</u>, 249 F.3d 130, 134 (2d Cir. 2001). A plaintiff will be relieved of this requirement only where he or she makes a "clear and positive showing" that pursuing available administrative remedies would be futile. *Id*. (citations omitted).

Because, for purposes of these motions, the Court is assuming the existence of an ERISA-qualified plan(s), it will also assume that the plan(s) contains the requisite internal administrative procedures for dispute resolution. As Niagara Mohawk/National Grid correctly notes, Plaintiff does not allege, nor is there the slightest inference, that he exhausted his administrative remedies prior to commencing suit. Likewise, there is no allegation or inference from which the Court can conclude that Plaintiff's pursuit of administrative remedies would be futile.

In response, Plaintiff merely states that "[d]efendants ("Nat. Grid") fail to enumerate for the court any of the 'required administrative remedies' nor does it annex any of the alleged benefit plans for review by this Court." (Docket No. 35, ¶ 6.) In addition to apparently misunderstanding the applicable standard of review on these motions to dismiss, Plaintiff tellingly does not dispute his failure to exhaust administrative remedies. Thus, liberally construing Plaintiff's Amended Complaint, and drawing all inferences in his favor, the Court is compelled to dismiss Plaintiff's claim that he was denied benefits in violation of ERISA. Absent any indication of administrative exhaustion, Plaintiff simply fails to allege that he is entitled to relief. This result also applies to the extent the denial of benefits claim is alleged against Defendants Cologne and Hamburger & Weiss (had it been properly served) as well.

### *b.* ***Whistle Blower Retaliation***

Plaintiff conclusorily alleges that National Grid, Niagara Mohawk, Local 97, and possibly Hamberger & Weiss, retaliated against him for whistle blower activities in violation of Section 510 of ERISA, codified at 29 U.S.C. § 1140. (Am. Compl. ¶¶ 2,113.) Niagara Mohawk /National Grid contends that Plaintiff has not pled sufficient facts to support <u>any</u> claim under ERISA. Plaintiff urges that the Amended Complaint "meets all of the legal requirements of Fed. R. Civ. P. § [sic] 8" and opines that, if it does not, Defendants' only recourse is to move for a more definite statement under Rule 12. (Docket No. 35 ¶¶ 12-14.)

With respect to retaliation, 29 U.S.C. § 1140 provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . .

There a four elements to an ERISA retaliation claim: (1) the plaintiff engaged in protected activity under ERISA, (2) his employer was aware of the protected activity, (3) the employer took adverse employment action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. <u>Kreinik v. Showbran Photo, Inc.</u>, No. 02 Civ. 1172, 2003 U.S. Dist. LEXIS 18276, at *12 (S.D.N.Y. Oct. 14, 2003) (citations omitted). While Plaintiff's Amended Complaint is replete with allegations of his complaints to management and his union, and subsequent retaliation—*e.g.*, he was perceived as a whistle blower and retaliated against for complaints of hostile work environment, dangerous conditions, retaliation, and discrimination (Am. Compl. ¶¶ 22-25), retaliated against for complaining about a

supervisor's discriminatory practices in the selection of shop stewards (¶¶ 28-32), retaliated against for filing a grievance against a co-worker (¶¶ 49-57), and retaliated against after filing a grievance about a safety issue (¶¶ 62, 72, 75)—none of his alleged "protected activity" involves an exercise of his rights under an employee benefit plan.  Consequently, there also are no fact allegations indicating a causal connection between any adverse action and the exercise of ERISA rights.   Plaintiff's conclusory assertion of ERISA retaliation, utterly devoid of supporting fact allegations, fails to state a claim for relief that is plausible on its face as to any Defendant.  Plaintiff's misunderstanding of the Federal Rules of Civil Procedure does not change this result.

### c.      Plaintiff's Claim of Criminal Conduct

Lastly, Plaintiff generally alleges that "defendants" violated 18 U.S.C. § 1027, a criminal statute which provides for fines or imprisonment for knowingly making a false statement, or knowingly concealing facts, in any document required by title I of ERISA. The only fact allegation arguably relevant to this "claim" is that "defendant corporations and its agents, servants and employees, backdated documents relative to Plaintiff's job and/or disability status to deceive him and to terminate him in violation of state and federal laws." (Am. Compl. ¶¶ 3, 100.)  This conclusory allegation does not possess enough heft to show that Plaintiff is entitled to relief under this statute.

Even were the allegations sufficient, the Supreme Court has cautioned against entertaining private causes of action based on "'a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone.'"  Burke v. Patchen, No. 08-CV-639, 2008 U.S. Dist. LEXIS 53498, at *3 (D. Conn. July 15, 2008) (quoting Cort v. Ash, 422 U.S. 66, 80, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).  "Not surprisingly then,

federal courts have generally refused to recognize private causes of action derived from criminal statutes." Korenyi v. Dep't of Sanitation of City of New York, 699 F. Supp. 388, 397 (E.D.N.Y. 1988) (citations omitted).

Nothing in the text of 18 U.S.C. § 1027 or its legislative history suggests that it was intended to create a private cause of action. Plaintiff has presented no authority suggesting otherwise, nor has the Court identified any. Accordingly, this Court finds Plaintiff cannot state a cognizable claim against any Defendant for a violation of 18 U.S.C. § 1027.

* * * * *

For the reasons stated, Plaintiff's ERISA claims are dismissed in their entirety.

### 4.    Plaintiff's ADA Claims

Plaintiff purports to assert an unspecified claim under the ADA (Am. Compl. ¶ 4), and also a claim for whistle blower retaliation "under 42 U.S.C. § 12101, *et seq*" (¶ 5). Local 97 (Docket No. 23-4 at 8-10) and Niagara Mohawk/National Grid (Docket No. 26 at 13) both move to dismiss Plaintiff's ADA claims due to his failure to file a charge with the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("NYSDHR") prior to bringing suit.

"Exhaustion of administrative remedies is a requirement for employment discrimination [and retaliation] actions under the ADA." Brown v. MTA New York City Transit, No. 06-CV-6857, 2008 U.S. Dist. LEXIS 84433, at *4 (E.D.N.Y. Oct. 21, 2008). To maintain a discrimination action under the ADA, a plaintiff must file a timely charge with the EEOC or the equivalent state agency, receive from that agency a right to sue letter,

and commence an action within 90 days after receipt of that letter.  <u>Cornwell v. Robinson</u>, 23 F.3d 694, 706 (2d Cir. 1994); <u>Manik v. Avram</u>, No. 06-CV-0477, 2007 U.S. Dist. LEXIS 88901, at *2 (S.D.N.Y. Dec. 3, 2007) (ADA does not allow a plaintiff to bring claim in federal court if plaintiff has not first exhausted remedies available from EEOC or an authorized state agency).

The "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).  However, circumstances supporting exceptions to the statutory requirements are rare.

Here, Plaintiff does not allege that he exhausted his administrative remedies prior to suit.  In fact, Plaintiff concedes that he did not.  In response to the motions to dismiss, Plaintiff's counsel opines, without citation, that:

> This Court is also bound by settled law to permit plaintiff to litigate its [sic] statutory claims in full.  This would include the ADA claims . . . .  No prior administrative filing is required for these claims to proceed in United States District Court.  The administrative bodies were established as a convenience and low cost alternative to U.S. citizens.

(Docket No. 35, ¶ 32.)

Plaintiff's unsupported assertions are contrary to settled law and are rejected.  Moreover, neither the Amended Complaint nor Plaintiff's response provide any indication of circumstances that would warrant waiver, estoppel, or tolling.  Accordingly, Plaintiff's ADA claims are dismissed in their entirety for failure to exhaust administrative remedies.

### 5.  Plaintiff's Claim for Breach of the Duty of Fair Representation

In his Amended Complaint, as in the original Complaint, Plaintiff conclusorily alleges

that Local 97 "failed and refused to lawfully represent Plaintiff and had a duty to do so for the acts complained of herein and other acts suffered by Plaintiff."  (Am. Compl. ¶ 35.) Local 97 contends that Plaintiff's claim must be dismissed as time-barred.  (Docket No. 23-4 at 7-8.)

Although Plaintiff does not set forth the statutory basis for this claim, it is well-settled that claims against an employee's union for the alleged breach of the duty of fair representation are evaluated pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).  *See* Lewis v. North General Hosp., 502 F. Supp. 2d 390, 407 (S.D.N.Y. 2007) ("Although Lewis does not cite a statutory basis for his claims against the Union, he apparently is asserting a claim for breach of the duty of fair representation under § 301 of the LMRA, 29 U.S.C. § 185.").

Claims for breach of the duty of fair representation are subject to a six-month statute of limitations.  *See e.g.*, DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 170-72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); Eatz v. DME Unit of Local Union No. 3 of Int'l Bhd. of Elec. Workers, AFL-CIO, 794 F.2d 29, 33 (2d Cir. 1986); Bush v. O.P.E.I.U. Local 153, 499 F. Supp. 2d 571, 574 (S.D.N.Y. 2007).  "In this circuit, it is well settled that the cause of action accrue[s] no later than the time when [plaintiff] knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained." Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir. 1995) (brackets in original) (citation and internal quotation marks omitted).

Plaintiff filed his original Complaint in New York State Supreme Court, Erie County, on September 15, 2006.  Thus, in order to be timely, Plaintiff must allege that Local 97

breached its duty of fair representation on or after March 15, 2006, six months prior to September 15, 2006. Here, Plaintiff alleges that he signed retirement papers "under duress," on November 13, 2003. (Am. Compl., ¶¶ 94, 96.) He does not allege any conduct by Local 97 after that date. Thus, any possible claim against Local 97 would have accrued on or before November 13, 2003, almost three years prior to the commencement of suit.

Plaintiff apparently concedes that any alleged breach by Local 97 occurred more than six months prior to his commencing this action, but contends he "is not bound by the six month statute of limitations against his union under the circumstances of this case and clearly may proceed also with his duty of fair representation." (Docket No. 35, ¶ 27.) Plaintiff's unsupported assertion, which does not even describe the circumstances to which he refers, is contrary to settled law. Accordingly, this claim is dismissed as untimely.

### 6. Plaintiff's Superfund Fraud Claim

Under the heading "Superfund Fraud," Plaintiff alleges that "in or about 1991, defendant companies held back the common stock dividends of Niagara Mohawk employees and represented that it was creating a 'Superfund' of millions of dollars, which fund then disappeared." (Am. Compl., ¶ 102.) He further claims that, in fall 2002, some aspects of employee 401k plans were eliminated or changed after the takeover by National Grid. (¶ 104.) Plaintiff further alleges that he objected to the changes and, approximately 18 months later, in February 2004, Defendant held back money from him in retaliation for his complaint. (¶¶ 105, 107.) It is unclear whether the funds allegedly held back were from the "Superfund," his 401k plan, or some other source.

This Court is at a loss as to how to characterize this claim, but it is clear Plaintiff intends to allege fraud. As Defendant Cologne correctly notes, special pleading

requirements apply to fraud claims. Rule 9(b) of the Federal Rules of Civil Procedures states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." <u>Shema Kolainu-Hear Our Voices v. ProviderSoft</u>, LLC, 2010 U.S. Dist. LEXIS 50447 (E.D.N.Y. May 21, 2010) (quoting <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 347 (2d Cir. 1996)). Plaintiff's "Superfund Fraud" allegations do not meet this standard. (Am. Compl. ¶¶ 102-107.)

In response to the motions to dismiss, Plaintiff contends that paragraph 94 of the Amended Complaint is sufficient to support a fraud claim.[5] (Docket No. 35, ¶ 36.) That paragraph alleges that "[w]hen Plaintiff contacted his employer, National Grid's Senior Human Resources Representative William N. Herron advised him that he would sent [sic] out 'retirement' papers, that plaintiff was 'retired', and threatened plaintiff that if he failed to sign them he would receive no money." Plaintiff further urges that "ADA and state law case is one link required to augment the fraud charges" and "the complaint clearly contends that each and every named defendant engaged in the fraud." (Docket No. 35, ¶ 38.)

Plaintiff's arguments notwithstanding, the Court has carefully reviewed the Amended Complaint in light of the Rule 9(b) pleading requirement and finds that it fails to state a claim for fraud. Accordingly, the "Superfund Fraud" claim, as well as any other claims of

---

[5] As this allegation appears entirely unrelated to paragraphs 102-107, it is unclear whether Plaintiff intends to abandon his "Superfund Fraud" claim.

fraud Plaintiff believes he has alleged, must be dismissed.

### 7.    **Plaintiff's State Law Claims**

Plaintiff alleges that Defendants violated a number of state laws, including (1) the "New York State law counterpart" to his ADA claim (Am. Compl. ¶ 4.), (2) the "state law counterpart" to his whistleblower retaliation claim (Am. Compl. ¶ 5), (3) "Worker's Compensation Law" (Am. Compl. ¶ 85), and (4) "Family Medical Leave Act of New York" (Am. Compl. ¶ 85). However, because all of Plaintiff's federal claims must be dismissed for the reasons stated above, this Court declines to exercise jurisdiction over Plaintiff's remaining state law claims, and finds that those claims should be dismissed. *See* <u>Marcus v. AT&T Corp.</u>, 138 F. 3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well").

## IV.  CONCLUSION

For the reasons stated above, all federal claims in the Amended Complaint are dismissed for failure to exhaust administrative remedies, failure to comply with the applicable statute of limitations, and/or failure to state a plausible claim for relief. Absent any federal claims, the Court declines to exercise jurisdiction over the remaining state law claims. Accordingly, the Amended Complaint is dismissed in its entirety.

## V.  ORDERS

IT HEREBY IS ORDERED, that Local 97's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 22) is GRANTED.

FURTHER, that the Motion by Niagara Mohawk, A National Grid Company, National

Grid, National Grid USA Service Company, Inc., and Niagara Mohawk Power Corporation (Docket No. 24) is DENIED to the extent it seeks to strike the Amended Complaint, but GRANTED to the extent it seeks to dismiss the Amended Complaint.

FURTHER, that Cologne Services Corporation's Motion (Docket No. 29) is DENIED to the extent it seeks to strike the Amended Complaint, but GRANTED to the extent it seeks to dismiss the Amended Complaint.

FURTHER, that because all claims in the Amended Complaint are subject to dismissal, Hamberger & Weiss is DISMISSED from this case.

FURTHER, that Plaintiff's Motion to Appoint Counsel (Docket No. 56) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


      SO ORDERED.

Dated:  August 24, 2010
        Buffalo, New York

                                                  _____s/William M. Skretny_____
                                                 WILLIAM M. SKRETNY
                                                    Chief Judge
                                           United States District Court